Federal Defenders
OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director*

*Southern District of New York*
Jennifer L. Brown
*Attorney-in-Charge*

September 11, 2022

**By ECF and Email**
Honorable Naomi Reice Buchwald
United States District Judge
Southern District of New York
500 Pearl Street
New York NY 10007

**Re: United States v. Durell Charles**
**21 Cr. 546 (NRB)**

Dear Judge Buchwald,

In advance of Mr. Charles's sentencing, we write in reply to the government's arguments regarding the proper offense level in this case. See Gov't Sent. Ltr., Dkt. No. 29.

The government argues that Mr. Charles's prior conviction for violating New York Penal Law § 220.16(1) is a "controlled substance offense" under the guidelines. In support of its position, the government makes the identical arguments it has repeatedly made in other cases – and that courts have repeatedly (indeed, almost uniformly) rejected. Indeed, Your Honor has already rejected them: "Having thought about this for a long time, I feel compelled to concur with the results reached by Judges Garaufis and Koeltl," who "found that the possession of certain cocaine isomers was illegal under New York law but not under federal law, and as a result of this over breadth, [the defendant's] New York controlled substance offenses were not qualifying 'controlled substances' offenses under U.S.S.G. 2K2.1." United States v. Ferrer, 20 Cr. 650 (NRB), Dkt. No. 25, Sent. Tr. 45:18-46:10, 50:25-51:3 (July 21, 2021) (Buchwald, J.); see also United States v. Neilly, 21 Cr. 94 (VEC), Sent. Tr. 3:18-4:1 (July 19, 2022) (Caproni, J.) (holding (again) that a New York State narcotics offense does not count as a "controlled substance offense under the guidelines "because the state list of what is a narcotic is broader than the federal list").

Courts throughout this district have held that § 220.16(1) is not a "controlled substance offense." For the reasons laid out in Mr. Charles's sentencing letter, see Dkt. No. 28, and those herein, we urge this Court find that Mr. Charles' guidelines are 30 to 37 months.

First, the government argues that the New York statute is not broader than the federal statute because New York does not name naloxegol.[1] Second, it argues that there is no "realistic probability" that New York would convict someone of selling naloxegol. Third, the government argues "narcotic drug" under New York law to include either naloxegol or isomers of cocaine other than optical and geometric isomers. Fourth, the government argues that there is no "realistic probability" that someone would be convicted in New York State under § 220.16(1) for possessing with intent to sell isomers of cocaine other than optical and geometric isomers. For the reasons described below, the government's arguments fail.

1) First, that naloxegol it is not named in the New York schedule is not dispositive. Judge Furman found as much:

> [U]nder the first step of the analysis mandated by Second Circuit cases, Townsend, Williams, Hylton, and the like…I am required to basically put the federal law and the state law side by side to determine if the state law is facially broader than federal law. And here, doing that reveals arguably a very simple and straightforward conclusion that, on its face, the state law is broader. That's because the language of the two provisions is basically the same, except the federal law, as of 2015, explicitly excludes naloxegol, while state law does not.

United States v. Galdieri, 19 Cr. 757, Dkt. No. 143 (Oct. 5, 2021) (Furman, J.) ("Galdieri Tr."), 16:20-17:6 (citing United States v. Townsend, 897 F.3d 66 (2d Cir. 2018); Williams v. Barr, 960 F.3d 68 (2d Cir. 2020); Hylton v. Sessions, 897 F.3d 57, 63 (2d Cir. 2018)).

The government seeks to avoid this straightforward disparity by arguing that naloxegol is a "derivative" of opium or opiate within the meaning of the federal schedule, but not the state one because New York does not have to adopt the DEA's definition of "derivative." But, Judge Furman found that even if "New York is not bound by the federal definition," the government failed point to "any of the traditional tools of statutory interpretation that one would normally look to in support of its argument that New York law does, in fact, define that term differently." Id. 17:11-20. In Galdieri, the government conceded that "it knows of no state authority interpreting it one way or another." Id. 17:21-25. In the absence of a statutory definition, the words in a statute must be given their common or ordinary meanings. See Smith

[1] In taking this position, the government does not acknowledge that it previously conceded that the New York schedule is broader than the federal one because it criminalizes naloxegol. See, e.g., Gov't Sent. Ltr., United States v. Disla, 20 Cr. 222 (AKH), Dkt. No. 23 (Nov. 23, 2020); Gov't Ltr., United States v. Devane, 19 Cr. 244 (F B), Dkt. No. 25 (E.D.N.Y. Nov. 30, 2020). Judge Furman also found that "there's at least a strong argument that the government took a contrary position in its opening brief on appeal in United States v. Gibson." Galdieri Tr. 25:15-24; United States v. Galdieri, 19 Cr. 757 (JMF), Dkt. No. 125 (citing United States v. Gibson, No. 20-3049, Dkt. No. 27 (2d Cir.), at 6 n.2 ("While the state and federal drug schedules aligned in 2002, a 2015 amendment to the Controlled Substances Act ("CSA") removed naloxegol as a federally controlled substance, rendering New York State Penal Law § 110/220.39-1 broader than its federal counterpart.") (emphasis added)).

v. United States, 508 U.S. 223, 228 (1993).[2] Instead, the government in Galdieri asked the Court to do the same thing it does here: "look at the fact that Movantik…which…is the brand name of naloxegol is…a preferred drug under the state's Medicaid program and the fact that the prescription monitoring program's drug list of controlled substances doesn't include naloxegol."[3] Galdieri Tr. 18:7-13. Judge Furman rejected that too:

> I don't see any suggestion that those sources have any force with respect to the meaning of the statutory term under New York law; that is, they are not rule-making authorities or forces to which a court would normally defer in terms of engaging in a statutory interpretation analysis.

Id. 18:13-18; see also, United States v. Savinon, 21 Cr. 233, Dkt. No. 25 (Oct. 1, 2021) (Liman, J.) (finding the defendant's prior state offenses were not controlled substances offenses because of the naloxegol mis-match).

2) Second, the "reasonable probability" test should not be applied.

The government's reliance on this test is inconsistent with the law. The Second Circuit has repeatedly held that the "realistic probability" test has no role to play when the relevant statute of conviction is facially broader than the generic federal one. See, e.g., Jack v. Barr, 966 F.3d 95, 98 (2d Cir. 2020) (per curiam); Williams v. Barr, supra; Hylton, supra. Indeed, Judge Furman made this exact finding:

> I don't think you get to the realistic probability test; I think Williams and Hylton are very clear on that. If the answer to the first step analysis is that state law is broader on its face, you don't get to realistic probability.

Galdieri Tr. 20:11-14. The government's efforts to apply an inapplicable test should be rejected.

3) Third, the government's claim that New York State only controls optical and geometric isomers (like the federal schedule) is wrong. New York's schedules rule out all isomers of cocaine without restriction, and there are isomers of cocaine that are neither optical nor geometric. Thus, New York criminalizes isomers that are beyond the federal schedule's reach, and is therefore, broader. See, e.g., United States v. Lawrence, 21 Cr. 127 (PGG), Sent. Tr. 9:8-15 (August 18, 2022) (Gardephe, J.) (holding "New York's definition of cocaine is broader than that provided in federal law").

---

[2] In a Declaration by Dr. Gregory B. Dudley, a Professor and Department Chair of the chemistry department at West Virginia University, submitted by Federal Defenders in United States v. Louissaint, he makes clear that under ordinary meanings in chemistry, "naloxegol is a derivative of opium or opiate." 20 Cr. 685 (PKC), Dkt. No. 31, Exh. A.

[3] The Prescription Management Program (PMP) list itself makes clear that it is "not exhaustive". See Gov't Ltr, Exh. A (emphasis added).

Every court to consider this issue in this district has found in the defendant's favor – including this Court. See Charles Sent. Ltr. (citing to decisions by Your Honor and Judges Cronan, Castel, Koeltl, Engelmayer, and Gardephe). Citing to no contrary authority, the government makes the same arguments to this Court that have already been rejected repeatedly. Indeed, the government's arguments in its letter about isomers in this case (see Gov't Ltr. 11-15) are copied verbatim from those made by the government in Gutierrez-Campos, 21 Cr. 40 (JPC), Dkt. No. 42 (Gov't Ltr., p. 11-17). In that case, Judge Cronan found in favor of the defendant:

> This plain textual reading of the relevant federal regulations compels the conclusion that New York's definition of cocaine, without limitation to particular types of isomers, is categorically broader than the federal definition. As such, the New York statute criminalizes conduct— specifically conduct involving cocaine isomers other than optical or geometric isomers—that the federal statute does not.

See Gutierrez Campos, at Dkt. No. 60, p. 28-35 (engaging in a full analysis of the New York State and federal definitions of isomers and rejecting all of the government's arguments); see also United States v. Hagood, 20 Cr. 656 (Engelmayer, J.), Dkt. No. 87 (Apr. 20, 2022), (weighing the same arguments presented herein and rejecting the government's argument on this issue); Lawrence, supra (same).

4) Fourth, the government again urges the Court to apply the "reasonable probability" test to the isomer argument, even though it is equally inapplicable, as discussed above. It is inappropriate to do so. Again, Judge Cronan agreed with the defense:

> Because the Court finds that New York's definition of cocaine, on its face, is broader than the federal definition, it does not address the Government's arguments under the realistic probability test.

See Gutierrez Campos, at Dkt. No. 60, p. 35 (citing Williams and Hylton, supra). See also Hagood, supra (declining to reach the reasonable probability test); Lawrence, supra, Sent. Tr. 9:16-21 ("given [the] conclusion [that the state law is broader than the federal law], I need not address the government's arguments regarding the realistic probability test"); United States v. Louissaint, 20 Cr. 685 (Castel, J.) (Nov. 17, 2021) (after finding "New York's definition control[s] isomers of cocaine that federal law does not," concluding "there is not the room for the Court to apply the realistic probability test.").

Thus, for the reasons discussed in this letter and in Mr. Charles's sentencing letter, each of the government's arguments must fail.

Finally, regarding each disputed fact herein, the rule of lenity requires a finding in Mr. Charles's favor. In the absence of binding (and in some arguments even persuasive) precedent, the government repeatedly relies on the ambiguity of the statutes in play, including New York's prohibition on the sale of naloxegol and isomers of cocaine that are neither optical nor geometric. See, e.g., Gov't Ltr. 6 (encouraging the Court to consider the absence of definitions, "indicia", and "wholly reasonable" interpretations). Under the rule of lenity, "any reasonable

doubt about the application of a penal law must be resolved in favor of liberty." See Wooden v. United States, 595 U.S. ___ (2022), 2022 WL 660610 (Mar. 7, 2022), at *15 (Gorsuch, J., concurring). "Since the founding, lenity has sought to ensure that the government may not inflict punishments on individuals without fair notice and the assent of the people's representatives. A rule that allowed judges to send people to prison based on intuitions about "merely" ambiguous laws would hardly serve those ends." Wooden, 2022 WL 660610 at *17 (Gorsuch, J., concurring) (internal citations omitted). Here, any such ambiguities should be resolved in favor of Mr. Charles.

Respectfully submitted,

/s/
Sylvie Levine
Counsel for Durell Charles